## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD MALMSTEIN and GEOFFREY VONMAUCHER, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>WEBER-STEPHEN PRODUCTS, LLC.<br><br>        Defendant. | Case No.<br><br><br>**CLASS ACTION COMPLAINT**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Richard Malmstein and Geoffrey vonMaucher ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their undersigned counsel, bring this class action complaint against Defendant Weber-Stephen Products, LLC (the "Defendant" or "Weber"). Plaintiffs allege the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiffs, which are alleged upon personal knowledge.

### INTRODUCTION

1. Defendant Weber-Stephen Products, LLC is one of the largest outdoor cooking equipment companies in the United States. Weber designs, manufactures, markets, and sells a variety of metal-crafted products, including outdoor grills, smokers, grill accessories, and related cooking equipment.

2. Weber's grill cleaning product portfolio includes metal wire bristle grill brushes designed for use with outdoor grills. Weber's Metal Wire Bristle Grill Brushes bearing Model Numbers 6277, 6278, 6463, 6464, 6493, and 6494 (the "Affected Products" or the "Brushes"), which are the subject of this action, are among Weber's widely marketed grill maintenance

1

products.

3.       The Affected Products were manufactured, distributed, and sold by Weber to consumers throughout the United States. Weber sold the Affected Products at retail prices ranging from $10 to $17.[1]

4.       Weber manufactures the Affected Products in China and Cambodia.[2] The Affected Products were manufactured and distributed with bristles that could detach during ordinary use, yet Weber did not disclose this material safety risk to consumers.

5.       During ordinary use, the metal bristles can dislodge from the brush head, adhere to grill grates, and subsequently become embedded in food cooked on the grill. If ingested, these sharp metal bristles can cause internal injuries, including puncture wounds to the mouth, throat, or gastrointestinal tract. These conditions render the Affected Products unsafe for their intended use and create a serious ingestion hazard to consumers, which Weber has acknowledged through a product recall.[3]

6.       Plaintiffs and other consumers had a reasonable expectation that the Affected Products would not pose a serious ingestion hazard, including the risk that metal bristles could detach during normal use, adhere to food, and be unknowingly ingested, which can cause internal injury.

7.       For example, on its official website Weber advertises the 12" Three-Sided Grill Brush as a reliable and effective cleaning tool, highlighting features such as a "3-sided bristle brush design," a "comfort-hold handle for leverage when cleaning stuck on food," a 12-inch length to

---

[1] *See Weber Recalls Over 3.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.cpsc.gov/Recalls/2026/Weber-Recalls-Over-3-2-Million-Metal-Wire-Bristle-Grill-Brushes-Due-to-Ingestion-Hazard (last visited Feb. 26, 2026).
[2] *Id.*
[3] *Id.*

"reach all areas of the grate," and a "2-year warranty."[4] The product description emphasizes the brush's ability to remove grease and debris and clean grill grates before each use so that the grill "lasts longer."[5] These representations convey that the brush is durable, dependable, and suitable for repeated ordinary use. However, nowhere on the product page does Weber disclose the material risk that the metal bristles may detach during normal use, adhere to grill grates or food, and pose a serious ingestion hazard to consumers.[6] *See Figure 1* below.



*Figure 1 - Screenshot of Weber's official website product page for the "12" Three-Sided Grill Brush" (Part No. 6277), displaying the product image and accompanying marketing descriptions and features*

8.  Weber's product packaging and accompanying materials provide general instructions for grill cleaning but fail to warn consumers about the risk that metal bristles may detach during ordinary use and become embedded in food.[7]

---

[4] *Grill Brush 12" Three-Sided,* WEBER, https://www.weber.com/PH/en/accessories/cleaning--et--care/grill-brush-6277/6277.html (last visited Feb. 26, 2026).
[5] *Id.*
[6] *See Weber Recalls Over 3.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard,* CONSUMER PRODUCT SAFETY COMMISSION (last visited Feb. 26, 2026).
[7] *Id.*

3

9. Upon information and belief, the product packaging, labeling, instructions, and advertising for the Affected Products do not adequately warn users about the risk that wire bristles can loosen, detach, remain on grill grates, adhere to food, and be unknowingly ingested.

10. Those representations and omissions regarding safety were false and misleading, and the Affected Products, by Weber's own subsequent recall, are not reasonably safe for their intended use.

11. On February 26, 2026, the U.S. Consumer Product Safety Commission ("CPSC") announced a recall of approximately 3.2 million Weber Metal Wire Bristle Grill Brushes. The recall identified a hazard that "small metal wire bristles can detach from the brushes, stick to the grill or food, posing an ingestion hazard and risk of serious internal injuries that could require surgery." The Affected Products were sold nationwide for approximately $10 to $17.[8]

12. In its marketing materials, including the product page shown in *Figure 1*, Weber promotes the grill brush as effective for removing grease and debris, cleaning stuck-on food, and reaching all areas of the grate. By emphasizing performance, leverage, and durability-related features while omitting the risk that metal bristles may detach during ordinary use and pose a serious ingestion hazard, Weber conveyed a misleading message regarding the safety of the Affected Products.

13. Weber also sells the Affected Products through third-party retailers, which promote that the bristles "resist wear." *See Figure 2,* below:

---

[8] *See Weber Recalls Over 3.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard*, CONSUMER PRODUCT SAFETY COMMISSION (last visited Feb. 26, 2026).



*Figure 2 - Claims that the Affected Product has "Thick stainless steel bristles" that "resist wear"*

14.　　Weber had notice of the ingestion hazard prior to the recall through publicly available consumer reviews and other information. For example, consumers reported that bristles loosened, fell out, or remained on grill grates after use.[9]

15.　　Consumers have reported durability and safety concerns with the Affected Products, including that the grill brushes deteriorate, shed bristles, or break apart during ordinary use. *See Figure 3* below.

---

[9] *Weber 12" Three-Sided Grill Brush, Review by Mateo dated 12 September, 2025*, AMAZON, https://www.amazon.in/product-reviews/B08M3TKHJB/ref=cm_cr_getr_d_paging_btm_next_4?ie=UTF8&reviewerType=all_reviews&pageNumber=4&sortBy=recent (last visited Mar. 2, 2026).



*Figure 3 - Amazon review by "Mateo"*

16.     One consumer review posted on Amazon states that the brush "fell apart on the second attempt," alleging that there was "nothing at all holding the handle on. No glue. No screws. No crimp." *See Figure 4* below. The reviewer reported that the brush separated during ordinary use after only two uses.[10]



*Figure 4- Amazon review by "V1 Logistics Ltd."*

17.     In another complaint submitted to the U.S. Consumer Product Safety Commission's SaferProducts.gov database, a consumer reported that "pieces of the bristles were breaking off

---

[10] *Weber 12″ Three-Sided Grill Brush, Review byV1 Logistics, Ltd. dated 24 April, 2025*, AMAZON, https://www.amazon.in/product-reviews/B08M3TKHJB/ref=cm_cr_getr_d_paging_btm_next_4?ie=UTF8&reviewerType=all_reviews&pageNumber=4&sortBy=recent (last visited Mar. 2, 2026).

during use. *See Figure 5* below[11]



*Figure 5 - SaferProducts.gov "Consumer Complaint Regarding Weber Grill Brush Bristle Hazard."*

---

[11] *Incident Report Details: Weber-Stephen Products LLC – 6278*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=5702666 (last visited Mar. 5, 2026).

18.     In another SaferProducts.gov submission, a consumer reported discovering a wire bristle in his mouth while eating a hamburger cooked on a home grill that had been cleaned with a Weber grill brush shortly before cooking. The submission further states that another metal bristle could be easily dislodged from the brush with minimal force. *See Figure 6* below.[12]

---

[12] *Incident Report Details: Weber-Stephen Products LLC – 6463*, CONSUMER PRODUCT SAFETY COMMISSION, https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1513154 (last visited Mar. 5, 2026).



*Figure 6 – SaferProducts.gov "Consumer Complaint Regarding Weber Grill Brush Bristle Hazard."*

19.     Additional consumer reviews from Walmart similarly report that the grill brush began "falling apart" after minimal use, with reviewers stating that the product was already deteriorating after only a few uses. *See Figure 7* below.[13]



*Figure 7 – Walmart Verified Purchase Review "Reporting Grill Brush Falling Apart During Normal Use"*

20.     Accordingly, Plaintiffs bring this action individually and on behalf of a New York Subclass, a Colorado Subclass, and a Nationwide Class of similarly situated individuals for equitable relief and to recover damages and restitution for: violation of the Colorado Consumer Protection Act; New York General Business Law §§ 349 and 350; Unjust Enrichment; Negligent Design; Negligent Failure to Warn; Negligence; and Breach of Implied Warranty of Merchantability (U.C.C. § 2-314).

## **PARTIES**

21.     Plaintiff Malmstein is a citizen of Colorado and owns the Weber 6464 18 Inch Bamboo Grill Brush, which he purchased on June 19, 2016, for $27.36. Plaintiff Malmstein purchased the Affected Product in reliance on Weber's reputation for producing safe and reliable grilling products.

22.     Plaintiff Geoffrey vonMaucher is a citizen of New York and owns a Weber grill

---

[13] *Weber 18" Bamboo Grill Brush*, WALMART,
https://www.walmart.com/reviews/product/460512689?entryPoint=viewAllReviewsBottom (last visited Mar. 5, 2026).

brush that he purchased from Lowe's in approximately April or May 2024. Plaintiff vonMaucher purchased the Affected Product believing it to be safe for ordinary use, given Weber's reputation as a well-known and trusted manufacturer of grilling products. Plaintiff vonMaucher later became concerned about the safety of the product after learning about the alleged defect involving the brush's metal bristles and now feels unsafe using it.

23.     Defendant Weber-Stephen Products, LLC is a Delaware limited liability company with its principal place of business located in Palatine, Illinois.

24.     Weber designs, manufactures, markets, distributes, advertises, warrants, and sells grilling products, including the Affected Products, throughout the United States.

25.     At all relevant times, Weber created and/or authorized the advertising, labeling, and representations regarding the safety and performance of the Affected Products.

## JURISDICTION AND VENUE

26.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because: (1) there are one hundred or more (named and unnamed) class members; (2) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest, fees, and costs; and, (3) there is minimal diversity because Plaintiffs and Defendant are citizens of different states.

27.     This Court may exercise personal jurisdiction over Defendant because Defendant does substantial business in this State and within this District, receives substantial compensation and profits from the marketing, distribution, and sales of products in this District, and has engaged in the unlawful practices described in this Complaint in this District. Defendant is also headquartered and a citizen of this state. Defendant thereby established sufficient minimum contacts by directing its commercial activities into the state and engaging in transactions that form the basis of Plaintiffs' claims.

28.     Venue is proper in this District under 28 U.S.C. § 1391 because the Defendant

resides in this District.

## COMMON FACTUAL ALLEGATIONS

### I.    Defendant Manufactured, Distributed, Marketed, and Sold the Affected Products

29.    The Affected Products contain metal wire bristles that can detach from the brushes, stick to grill grates or food, and pose an ingestion hazard and risk of serious internal injuries that could require surgery.[14]

30.    Defendant manufactured, distributed, marketed, and sold the Affected Products. The packaging and marketing materials for the Affected Products did not disclose the ingestion hazard associated with detached bristles.

31.    Defendant engaged in marketing efforts to persuade consumers of the benefits of the Affected Products. Weber and its retail partners promoted the brushes through online advertising, product packaging, and retailer listings, emphasizing durability, heavy-duty construction, and effective grill cleaning performance.[15]

32.    Weber makes statements on its website touting product quality. For example, Weber states that it "proudly stand[s] behind our grilling accessories and our quality controls."[16]

33.    Defendant's product pages and marketing materials emphasize durability and performance. Weber touts the brushes as "secure" and designed for effective cleaning of grill grates. Nowhere do the product pages, packaging, or promotional materials disclose the material risk that metal bristles can detach during ordinary use, remain on grill grates, adhere to food, and be unknowingly ingested — creating a foreseeable and serious ingestion hazard.[17]

---

[14] *See Weber Recalls Over 3.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard*, CONSUMER PRODUCT SAFETY COMMISSION (last visited Feb. 26, 2026).

[15] *Grill Brush 12" Three-Sided,* WEBER, (last visited Feb. 26, 2026).

[16] *Satisfaction Guarantee for Grilling Accessories*, WEBER, https://www.weber.com/US/en/satisfactionguarantee.html (last visited Feb. 26, 2026).

[17] *Grill Brush 12" Three-Sided,* WEBER, (last visited Feb. 26, 2026).

34.     Defendant sold the Affected Products through its website and third-party retailers nationwide, including Lowe's, Home Depot, Ace Hardware, and Target, and online at Amazon and Weber.com. The products were sold for approximately $10 to $17.[18]

## II.     Defendant's Design Poses a Serious Ingestion Hazard

35.     Defendant's Affected Products pose a serious ingestion hazard because metal bristles can detach during ordinary and foreseeable use.

36.     Detached bristles are small, thin, and difficult to detect. They may embed in grill grates and later adhere to food cooked on the grill. Consumers may unknowingly ingest detached bristles.

37.     Ingestion of wire bristles can cause serious injuries, including puncture wounds to the mouth, throat, stomach, and intestines; internal bleeding; infection; and the need for emergency medical treatment or surgery.

38.     The Affected Products were manufactured and distributed with bristles that may detach during foreseeable use. Despite this hazard, the product packaging, instructions, and online materials did not include warnings regarding bristle detachment and ingestion risks.

39.     Feasible, safer alternative designs were available at reasonable cost at all relevant times, including, but not limited to:

     a.     bristle-free grill cleaning tools;

     b.     coiled-wire brush systems designed to minimize detachment;

     c.     scraper-based cleaning tools; and

     d.     alternative cleaning mechanisms that eliminate loose metal bristles.

40.     Weber had ample notice of the ingestion hazard from publicly available consumer

---

[18] *See Weber Recalls Over 3.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard*, CONSUMER PRODUCT SAFETY COMMISSION (last visited Feb. 26, 2026).

reviews and longstanding industry awareness of wire-bristle ingestion injuries prior to the recall. Consumers reported instances of bristles loosening, falling out, or remaining on grill grates after use.

41.     Upon information and belief, Weber received direct consumer complaints regarding bristle detachment prior to the recall. These complaints, coupled with well-documented ingestion injuries associated with wire grill brushes, placed Weber on actual or constructive notice of the defect. Nevertheless, Weber continued to market and sell the Affected Products without adequate warning or redesign.

### III.    Defendant's False and Misleading Advertising Campaign to Promote Safety and Induce Consumers to Purchase the Affected Products

42.     Weber and its retail partners promoted the Affected Products as durable, safe, and effective grill cleaning tools. The advertising emphasized strength, reliability, and performance, conveying a message that the brushes were suitable for routine household use.

43.     At no point did Weber disclose in its marketing materials the known risk that metal bristles could detach and pose a serious ingestion hazard. Instead, the advertising created a false impression of safety and reliability that was inconsistent with the defect later acknowledged in the CPSC recall.

44.     When it sold the Affected Products, Weber's consumer-facing marketing was materially misleading and induced consumers to purchase and use the brushes under a false sense of safety. By promoting durability and effectiveness while concealing the known ingestion risk, Weber engaged in deceptive and misleading advertising practices.

45.     Nowhere on the product packaging, website, or instructions did Weber adequately disclose the material risk that metal bristles may detach during normal use and be unknowingly ingested.

14

46.     Grill-cleaning tools are expected to be reasonably safe for their intended and foreseeable use. A product that sheds small, sharp metal fragments capable of causing internal injury does not meet reasonable consumer safety expectations.

47.     Defendant positioned itself in the marketplace as a trusted manufacturer of premium grilling products, distinguishing its brushes from lower-cost alternatives. By emphasizing quality and durability, Weber fostered consumer trust and influenced purchasing decisions.

48.     Consumers reasonably relied on Weber's representations that its grill brushes were durable and safe for ordinary grill cleaning use.

49.     As a result, consumers — including Plaintiffs — were induced to purchase the Affected Products and/or pay a premium price based on Weber's representations. In reality, the Affected Products posed a serious ingestion hazard, as confirmed by the nationwide CPSC recall.

## IV.    Consumers Have Been Harmed by Defendant's False and Misleading Representations

50.     Defendant knew, or should have known, that the advertising and labeling claims made regarding the Affected Products were false and misleading in light of the ingestion hazard.

51.     Defendant knew, or should have known, that failing to disclose the ingestion risk would mislead reasonable consumers regarding the safety of the Affected Products.

52.     Defendant continued to market and sell the Affected Products despite knowledge, actual or constructive, of the foreseeable ingestion hazard.

53.     Defendant's marketing materials emphasized durability and effectiveness, while omitting the material fact that bristles could detach and cause internal injury.

54.     Defendant knew, or should have known, that its representations and omissions would mislead consumers into believing the Affected Products were safe for ordinary use.

55.     Defendant knew, or should have known, that consumers would purchase the Affected Products instead of alternative grill-cleaning tools based on the false belief that the Affected Products were reasonably safe.

56.     Had Defendant disclosed the true risks of the Affected Products, Plaintiffs would not have purchased them, or would have paid less for them, had they been truthfully and accurately labeled.

## V.  The Affected Products Have Been the Subject of a Recall with an Insufficient Remedy

57.     On or about February 26, 2026, Weber announced a recall of approximately 3.2 million Metal Wire Bristle Grill Brushes due to ingestion hazards.

58.     The CPSC recall notice warned that metal bristles can detach from the brush and be ingested, posing a serious ingestion hazard.

59.     Weber advised consumers to immediately stop using the Affected Products, discard them, and contact Weber for a replacement.

60.     The recall does not adequately remedy the overpayment and diminution-in-value damage suffered by consumers who purchased the Affected Products in reliance on Weber's misleading representations.

61.     The remedy is insufficient because a replacement part for a similar product does not cure the defect or make Plaintiffs and Class Members whole.[19]

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

62.     Weber is equitably estopped from asserting any statute-of-limitations defense

---

[19] The remedy is as follows "Consumers should immediately stop using the recalled grill brushes and contact Weber for a cold cleaning nylon bristle grill brush replacement. Consumers will be asked to discard the recalled grill brushes." *See Weber Recalls Over 3.2 Million Metal Wire Bristle Grill Brushes Due to Ingestion Hazard*, CONSUMER PRODUCT SAFETY COMMISSION (last visited Feb. 26, 2026).

because it marketed and sold the Affected Products without disclosing the material bristle-detachment and ingestion hazard, despite having superior knowledge of that risk. Plaintiffs and Class Members neither knew nor reasonably could have discovered their claims earlier because the defect manifests during use and Weber did not disclose it until the February 26, 2026 recall.

63. The statute of limitations applicable to Plaintiffs' and the Classes' claims was tolled by Weber's conduct and Plaintiffs' and Class Members' delayed discovery of their claims.

64. As alleged above, Plaintiffs and members of the Classes did not know, and could not have known, that the Affected Products were dangerous. Plaintiffs and members of the Classes could not have discovered Weber's unlawful conduct with reasonable diligence.

## **CLASS ACTION ALLEGATIONS**

65. Plaintiffs bring this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for household use within any applicable limitations (the "Nationwide Class").[20]

66. Plaintiffs bring this action individually and on behalf of the following Colorado subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of Colorado for household use within any applicable limitations (the "Colorado Subclass").

67. Plaintiffs bring this action individually and on behalf of the following New York subclass:

> All persons who purchased one or more of Defendant's Affected Products in the state of New York for household use within any applicable limitations (the "New

---

[20] Plaintiffs reserve the right to amend or modify the proposed Class definition, including the identification of Affected Products, after discovery reveals additional information regarding the design, manufacture, marketing, or distribution of Weber's metal wire bristle grill brushes.

York Subclass").

68.     Excluded from the Class and Subclasses are: (1) any Judge or Magistrate presiding over this action and any members of their families; and (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, any entities in which Defendant or their parents and any entities in which Defendant have a controlling interest and their current or former employees, officers, and directors.

69.     Numerosity (Rule 23(a)(1)): The exact number of members of the Class is unknown and currently unavailable to Plaintiffs, but joinder of individual members herein is impractical. The Class is likely comprised of thousands, if not millions, of consumers. The precise number of Class Members, and their addresses, is unknown to Plaintiffs at this time, but can be ascertained from Defendant's records and/or retailer records. The members of the Class may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

70.     Predominant Common Questions (Rule 23(a)(2) and (b)(3)): The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. The common and legal questions include, but are not limited to, the following:

       a.     whether the Affected Products were defectively designed such that metal bristles could detach during ordinary use and pose an ingestion hazard;

       b.     whether Defendant's marketing omitted material defects/hazards;

       c.     whether the recall demonstrates a feasible alternative design;

       d.     Whether the marketing, advertising, packing, and labeling for the Affected Products were false, misleading, and/or deceptive;

       e.     Whether Defendant violated the state consumer protection statutes alleged

herein;

    f.    Whether Defendant was unjustly enriched; and

    g.    The nature of relief, including damages and equitable relief, to which Plaintiffs and members of the Class are entitled.

71.    Typicality of Claims (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because Plaintiffs, like all other Class Members, purchased one of the Affected Products, suffered damages as a result of that purchase, and seek the same relief as the proposed Class Members.

72.    Adequacy of Representation (Rule 23(a)(4)): Plaintiffs adequately represent the Class because their interests do not conflict with the interests of the members of the Class, and they have retained counsel competent and experienced in complex class action and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Class.

73.    Superiority (Rule 23(b)(3)): A class action is superior to other available means of adjudication for this controversy. It would be impracticable for members of the Class to individually litigate their own claims against Defendant because the damages suffered by Plaintiffs and the members of the Class are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments, delay, and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

74.    Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)): In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for

the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
**Violation of the Colorado Consumer Protection Act**
**C.R.S. §§ 6-1-101 et seq.**
**(On behalf of Plaintiff Richard Malmstein, individually, and the Colorado Subclass)**

75.     Plaintiff Malmstein hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

76.     The Colorado Consumer Protection Act ("CCPA") prohibits deceptive trade practices in the course of a defendant's business, including knowingly making false representations regarding the characteristics, uses, benefits, or qualities of goods, and failing to disclose material information concerning goods offered for sale. *See* C.R.S. § 6-1-105.

77.     Defendant engaged in deceptive trade practices within the meaning of the CCPA by, among other things:

    a.      representing that the Affected Products were durable, safe, and suitable for ordinary grill-cleaning use;

    b.      marketing the Affected Products as reliable cleaning tools with "thick stainless steel bristles" that "resist wear" and are suitable for routine use;

    c.      failing to disclose that the metal bristles could detach during ordinary use, remain on grill grates, adhere to food, and create a serious ingestion hazard;

and

d.     continuing to market and sell the Affected Products despite knowledge of the detachment hazard and consumer complaints.

78.     Defendant's misrepresentations and omissions concerned material characteristics and safety risks associated with the Affected Products and were likely to mislead reasonable consumers acting under the circumstances.

79.     Defendant's deceptive trade practices occurred in the course of its business, vocation, or occupation as a manufacturer and seller of consumer grilling products.

80.     Defendant's conduct significantly impacts the public as actual or potential consumers because:

a.     Defendant sold the Affected Products nationwide through major retailers, including Lowe's, Home Depot, Target, and other retailers;

b.     approximately 3.2 million units of the Affected Products were distributed to consumers;

c.     the deceptive practices were directed broadly to consumers through product packaging, online advertising, and retail marketing materials; and

d.     the ingestion hazard associated with the products presents a safety risk affecting a large number of consumers.

81.     Plaintiff Malmstein and members of the Colorado Subclass purchased the Affected Products in reliance on Defendant's representations and omissions concerning the safety, durability, and reliability of the products.

82.     Defendant's deceptive practices caused Plaintiff Malmstein and members of the Colorado Subclass to suffer injury in fact, including but not limited to overpayment for the Affected Products, diminution in value, and the purchase of products that were not as represented.

83. Defendant's deceptive conduct was in reckless disregard of consumers' rights and safety.

84. As a direct and proximate result of Defendant's violations of the CCPA, Plaintiff Malmstein and the Colorado Subclass have suffered damages.

85. Pursuant to C.R.S. § 6-1-113, Plaintiff Malmstein and the Colorado Subclass seek actual damages, treble damages where permitted by law, restitution, injunctive relief, attorneys' fees, costs, and any other relief the Court deems just and proper.

<u>**COUNT II**</u>
**Violation of New York Deceptive Acts and Practices Law**
**New York General Business Law § 349**
**(On behalf of Plaintiff Geoffrey vonMaucher, individually, and the New York Subclass)**

86. Plaintiff vonMaucher hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

87. New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

88. The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff vonMaucher and the New York Subclass Members seek monetary damages against Defendant, enjoining Defendant from inaccurately describing, labeling, marketing, and promoting the Products.

89. Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

90. Defendant's improper consumer-oriented conduct — including failing to disclose that the Affected Products' metal bristles can loosen, detach, and contaminate food during normal use — is misleading in a material way in that it, inter alia, induced Plaintiff vonMaucher and the

New York Subclass to purchase Defendant's Affected Products and to use them when they otherwise would not have. Defendant made these untrue and/or misleading statements and omissions willfully, wantonly, and with reckless disregard for the truth.

91. Plaintiff vonMaucher and the New York Subclass have been injured inasmuch as they purchased Affected Products that were mislabeled and entirely worthless. Accordingly, Plaintiff vonMaucher and the New York Subclass received less than what they bargained and paid for.

92. Defendant's advertising and Affected Products' packaging and labeling induced Plaintiff vonMaucher and the New York Subclass to buy Defendant's Affected Products.

93. Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a), and Plaintiff vonMaucher and the New York Subclass have been damaged thereby.

94. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff vonMaucher and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

### COUNT III
**Violation of New York False Advertising Law**
**New York General Business Law § 350**
**(On behalf of Plaintiff Geoffrey vonMaucher individually, and the New York Subclass)**

95. Plaintiff vonMaucher hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

96. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

    a. False advertising in the conduct of any business, trade, or commerce or in the furnishing of any service in this state is hereby declared unlawful.

97. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

a. The term "false advertising," including labeling, of a commodity, or of the kind, character, terms, or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual.

98. Defendant's labeling and advertisements contain untrue and materially misleading statements and omissions concerning its Affected Products inasmuch as it misrepresents that the Affected Products are safe for use and does not list that the Affected Products have metal bristles that may loosen or detach during routine use.

99. Plaintiff vonMaucher and the New York Subclass have been injured inasmuch as they saw the labeling, packaging, and advertising and purchased Affected Products that were mislabeled and entirely worthless. Accordingly, Plaintiff vonMaucher and the New York Subclass received less than what they bargained and paid for.

100. Defendant's advertising, packaging, and Affected Products' labeling induced Plaintiff vonMaucher and the New York Subclass to buy Defendant's Affected Products.

101. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

102. Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

24

103.    Defendant made the material misrepresentations described in this Complaint in its advertising and on the Affected Products' packaging and labeling.

104.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations. As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff vonMaucher and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs. Moreover, all consumers who purchased the Affected Products were and continue to be exposed to the Defendant's material misrepresentations.

105.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff vonMaucher and the New York Subclass are entitled to monetary, statutory, compensatory, treble, and punitive damages, interest, and attorneys' fees and costs.

### COUNT IV
### UNJUST ENRICHMENT
### (On behalf of the Plaintiffs, individually, and the Class)

106.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

107.    Plaintiffs and Class Members conferred benefits upon Defendant. Plaintiffs and Class Members paid money for Defendant's Affected Products that they would not have purchased or would not have purchased on the same terms had they known that the Affected Products were unsafe.

108.    Defendant unjustly retained the benefits conferred upon by Plaintiffs and Class Members.

109.    Defendant retained those benefits under circumstances that make it inequitable for

25

Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products were unsafe and could not perform as advertised. If Plaintiffs and Class Members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiffs and Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

110.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and members of the Class is unjust and inequitable, Defendant must pay restitution to Plaintiffs and members of the Class for its unjust enrichment, as ordered by the Court.

**COUNT V**
**NEGLIGENT DESIGN**
**(On behalf of the Plaintiffs, individually, and the Class)**

111.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

112.    Defendant had a duty to exercise reasonable care in the design of the Affected Products to avoid unreasonable, foreseeable risks of harm where safer, feasible alternatives existed.

113.    The Affected Products' elongated handle and rigid bristle head design invite users to apply downward pressure and leverage while scrubbing grill grates, placing food-contact surfaces directly beneath and in contact with the bristles during ordinary cleaning. Because the metal bristles may loosen or detach during routine use, consumers are exposed to a danger zone where dislodged bristles can remain on the grill surface, adhere to food, and be unknowingly ingested.

114.    Feasible, safer alternative designs were available at reasonable cost, including, but not limited to: (a) bristle-free grill cleaning mechanisms; (b) reinforced or mechanically secured bristle anchoring systems designed to prevent loosening and detachment during ordinary use; (c)

26

alternative materials less prone to breakage or separation; (d) enhanced durability and stress-testing protocols to identify detachment risks prior to sale; and (e) clear, prominent warning labels and instructions regarding inspection, maintenance, and the risk of bristle detachment and ingestion.

115.    Defendant breached its duty by adopting and selling the above layout without proper safeguards.

116.    This defective design was a substantial factor in causing the bristle-detachment incidents alleged by Plaintiffs and the putative Class Members, resulting in metal bristles separating during ordinary use and creating a dangerous ingestion hazard.

117.    Defendant had actual and constructive knowledge of the defect well before the recall announcement, including consumer complaints, internal testing, and incident data accumulated over years. Defendant continued marketing and selling the Affected Products without adequate warning or redesign.

118.    Plaintiffs and the Class suffered damages and related losses, proximately caused by Defendant's negligent design.

119.    Plaintiffs and the Class suffered economic injury, proximately caused by Defendant's negligent design.

**COUNT VI**
**NEGLIGENT FAILURE TO WARN**
**(On behalf of the Plaintiffs, individually, and the Class)**

120.    Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

121.    Defendant owed a duty to provide adequate warnings and instructions regarding non-obvious risks known or reasonably knowable at the time of sale, and — when appropriate — to provide post-sale warnings as knowledge of hazards emerged.

122.     The risk that metal bristles could loosen and detach during ordinary grill cleaning, remain on the grill surface, and adhere to food, thereby creating a serious ingestion hazard, was not open and obvious to ordinary consumers at the time of purchase.

123.     Defendant knew or, in the exercise of reasonable care, should have known of the hazard through pre-market testing, consumer complaints, and product-use data. Post-sale, Defendant received customer reviews reporting issues, yet failed to timely issue adequate warnings, instructions, or interim safety guidance.

124.     Defendant breached its duties by omitting clear pre-sale warnings about the risk of metal bristles detaching, and failing to offer a full refund for the Affected Products.

### COUNT VII
### NEGLIGENCE
### (On behalf of the Plaintiffs, individually, and the Class)

125.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

126.     Defendant owed Plaintiffs and the Class a duty to exercise reasonable care in the design, testing, manufacture, marketing, instructions, and warnings for its grill brushes, including a continuing post-sale duty to take reasonable steps to warn consumers and mitigate the hazard once it knew or should have known that metal bristles could detach during ordinary use and pose a serious ingestion risk.

127.     Defendant breached these duties by, among other things: (a) designing and manufacturing grill brushes with metal bristles prone to loosening and detaching during ordinary use; (b) failing to conduct adequate pre-market durability and safety testing, or failing to act on such testing; (c) failing to provide adequate pre-sale warnings and instructions regarding the risk that detached bristles could remain on grill grates and adhere to food, creating an ingestion hazard; and (d) failing, post-sale, to timely warn prior purchasers, issue corrective instructions, or

28

implement prompt remedial measures after receiving consumer complaints, reports of detachment, and injury incidents.

128.     The risk that metal bristles could loosen and detach during ordinary grill cleaning, remain on cooking surfaces, and adhere to food was foreseeable to Defendant, and safer, feasible alternative designs and precautions were available at reasonable cost, including the use of bristle-free cleaning mechanisms, reinforced or mechanically secured bristle anchoring systems to prevent detachment, enhanced durability testing protocols, and clear, prominent warnings and instructions regarding inspection and ingestion hazards.

129.     Defendant's negligence was a substantial factor in causing the bristle-detachment incidents and resulting ingestion hazards suffered by Plaintiffs and the Class during ordinary and intended use of the grill brushes. Such harm was a reasonably foreseeable consequence of the breaches alleged herein.

130.     As a direct and proximate result, Plaintiffs and the Class suffered out-of-pocket losses and a diminution in value.

## COUNT VIII
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### U.C.C. § 2-314
### (On behalf of the Plaintiffs, individually, and the Class)

131.     Plaintiffs hereby incorporate all other paragraphs of this Complaint and restate them as if fully set forth herein.

132.     Defendant is a merchant that designed, manufactured, marketed, and sold the Affected Products for ordinary household cooking use.

133.     An implied warranty arose that the grill brushes were fit for the ordinary purposes for which such goods are used, including safe cleaning of a grill.

134.     The Affected Products were not merchantable at the time of sale because their

bristle-based design permits and invites routine, forceful scrubbing of grill grates during ordinary use, while the metal bristles can loosen and detach, remain on cooking surfaces, and adhere to food, thereby exposing consumers to a serious and foreseeable ingestion hazard.

135.　Defendant knew or should have known of this hazard through pre-market testing and post-sale complaints and reviews, yet continued sales without an adequate design fix or effective warnings.

136.　Plaintiffs and Class Members purchased the grill brushes from Defendant or its authorized retailers. To the extent privity is required, it is satisfied by purchases through Defendant's retail channels and/or because purchasers were intended third-party beneficiaries of Defendant's warranties.

137.　Any purported warranty disclaimer or limitation is unenforceable because it was not conspicuous, is unconscionable given the undisclosed safety defect, and in all events any limited remedy failed of its essential purpose.

138.　Defendant had actual notice from consumer complaints.

139.　Defendant's breach was a proximate cause of overpayment, out-of-pocket and replacement costs, and diminution in value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Defendant as follows:

a.　Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as the representative of the Class, and designating Plaintiffs' counsel as Class Counsel;

b.　Awarding Plaintiffs and the Classes compensatory damages;

c.　An order requiring Defendant to implement a court-supervised refund and

corrective-notice program for all Affected Products;

d.    Corrective advertising and disclosure statements at points of sale and on Defendant's website;

e.    Disgorgement and restitution of monies received from Class Members as a result of the defective and misrepresented products;

f.    Awarding Plaintiffs and the Classes appropriate relief, including but not limited to actual damages;

g.    For declaratory and equitable relief, including restitution and disgorgement;

h.    For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

i.    Awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

j.    Awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

k.    Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to cure inadequate recall and notification processes, correct its manufacturing and marketing practices, and to comply with the relevant consumer protection statutes;

l.    Awarding pre-judgment and post-judgment interest;

m.    For punitive damages; and

n.    Granting any other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury of all claims so triable.

Dated: March 9, 2026

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Tyler Litke*
Tyler Litke (6330041)
Mark S. Reich*
Michael N. Pollack*
33 Whitehall Street, 27th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: tlitke@zlk.com
Email: mreich@zlk.com
Email: mpollack@zlk.com

**pro hac vice* forthcoming

*Counsel for Plaintiffs and the proposed
Class and Subclasses*